# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
## _____JACKSONVILLE_____ DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

PROVIDED TO COLUMBIA CORRECTIONAL INSTITUTION
ON  5-12-15   (DATE) FOR MAILING
CY (STAFF INITIAL)          (INMUNITIAL)

FILED

Drew C. Hartley                     ,

Inmate # __268221__
   (Enter full name of Plaintiff)

vs.

CASE NO: 3:15-CV-609-J-32JRK
      (To be assigned by Clerk)

Julie L. Jones, current
Secretary of Florida
Department of Corrections       ,
Edwin Buss, former Secretary    ,
of Florida Department of        .

   — SEE CONTINUATION PAGE —

(Enter name and title of each Defendant.
If additional space is required, use the
blank area below and directly to the right.)

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

Corrections, Kenneth S. Tucker, former Secretary of Florida Department of Corrections, Michael D. Crews, former Secretary of Florida Department of Corrections, Walter A. McNeil, former Secretary of Florida Department of Corrections, Ryan D. Beaty, Correctional Medical Authority, Lee B. Chaykin, Correctional Medical Authority, Long Do, Medical Services Director, Olugbenga Ogunsanwo, Medical and Health Services, Assistant Secretary, Tom Reimers, Health Services Administration Director, Collean D'Acquisto, Nursing Services Director, Calvin B. Johnson, Chief Medical Officer, C. Calderon, Medical Doctor, S. Vilchez, Medical Doctor, M. Pastora, ARNP, P. Marceus, Medical Doctor, M. Cabaleiro, Medical Doctor, Drake, Warden, T. Bowden, Prison Administrator, Ebony O Harvey, Prison Administrator, M. Nichols, ARNP, W. Rummel, Medical Doctor, Celeste Kemp, Prison Administrator, Pilar Tournay, Prison Administrator, Randy Tifff, former Warden, J. Haas, former Asst.

- SEE CONTINUATION PAGE -

Warden, and A. Gordon,

Asst. Warden;

## I.   PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:   *Drew C. Hartley*

Inmate Number   *268221*

Prison or Jail:   *Columbia Correctional Institution-Annex*

Mailing address:   *216 S.E. Corrections Way*

*Lake City, Fl. 32025*


## II.   DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for every Defendant:

(1)   Defendant's name:   *Julie L. Jones*

Official position:   *Secretary*

Employed at:   *Florida Dept of Corrections*

Mailing address:   *501 S. Calhoun Street*

*Tallahassee, Fl. 32399-2500*

(2)   Defendant's name:   *Edwin Buss*

Official position:   *Former Secretary*

Employed at:   *Florida Dept of Corrections*          — SEE CONTINUATION PAGE —

Mailing address:   *501 S. Calhoun Street*

*Tallahassee, Fl. 32399-2500*

(3)   Defendant's name:   *Kenneth S. Tucker*

Official position:   *Former Secretary*

Employed at:   *Florida Dept of Corrections*

Mailing address:   *501 S. Calhoun Street*

*Tallahassee, Fl. 32399-2500*


## ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS

(4) Michael D. Crews,

   Former Secretary,

   Florida Dept of Corrections,

   501 S. Calhoun Street,

   Tallahassee, Fl. 32399-2500

(5) Walter A. McNeil,

   Former Secretary,

   Florida Dept. of Corrections,

   501 S. Calhoun Street,

   Tallahassee, Fl. 32399-2500

(6) Ryan D. Beaty,

   Health Care Administration,

   Correctional Medical Authority,

   502 West Highway Highland Blvd.,

   Inverness, Fl. 34452

(7) Lee B. Chaykin,

   Health Care Administration,

   Correctional Medical Authority,

   8201 West Broward Boulevard,

   Plantation, Fl. 33324

(8) Long Do, MD,

   Medical Services Director,

   Florida Dept of Corrections,

   501 S. Calhoun Street,

   Tallahassee, Fl. 32399-2500

— SEE CONTINUATION PAGE —

5

(9) Olugbenga Ogunsanwo, MD,

   Medical & Health Services Asst. Secretary,

   Florida Dept of Corrections,

   501 S. Calhoun Street,

   Tallahassee, Fl. 32399-2500

(10) Tom Reimers,

   Health Services Administration Director,

   Florida Dept of Corrections,

   501 S. Calhoun Street,

   Tallahassee, Fl. 32399-2500

(11) Collean D' Acquisto,

   Nursing Services Director,

   Florida Dept of Corrections,

   501 S. Calhoun Street,

   Tallahassee, Fl. 32399-2500

(12) Calvin B. Johnson, MD,

   Chief Medical Officer,

   Corizon Health Services, Inc.,

   800 S. Gray Street, Ste. 2021

   Knoxville, Th. 37927-9710

(13) C. Calderon, MD,

   Medical Doctor,

   Tomoka Correctional Institution,

(14) S. Vilchez, MD,                    - SEE CONTINUATION PAGE-

6

Medical Doctor

Franklin Correctional Institution,

1760 Hwy 67 N.

Carrabelle, Fl. 32322

(15) M. Pastora, ARNP,

Nurse,

Columbia Correctional Institution-Annex,

216 S.E. Corrections Way,

Lake City, Fl. 32025

(16) P. Marceus, MD,

Medical Doctor,

Columbia Correctional Institution Annex,

216 S.E. Corrections Way,

Lake City, Fl. 32025

(17) M. Cabaleiro, MD,

Medical Doctor,

Polk Correctional Institution

10800 Evans Rd.

Polk City, Fl. 33868

(18) Drake, Warden,

Columbia Correctional Institution, Annex,

216 S.E. Corrections Way,

Lake City, Fl. 32025

(19) Toni Bowden, Administrator,

Florida Dept of Corrections,

501 S. Calhoun Street,                    — SEE CONTINUATION PAGE—

7

Tallahassee, Fl. 32399-2500

(20) Ebony O Harvey, Administrator,

Florida Dept of Corrections,

501 S. Calhoun Street,

Tallahassee, Fl. 32399-2500

(21) M. Nichols,

Nurse,

Santa Rosa Correctional Institution

5850 E. Milton Road,

Milton, Fl. 32583

(22) W. Rummel, MD,

Medical Doctor

Santa Rosa Correctional Institution

5850 E. Milton Road,

Milton, Fl. 32583

(23) Celeste Kemp, Administrator,

Florida Dept of Corrections,

501 S. Calhoun Street,

Tallahassee, Fl. 32399-2500

(24) Pilar Tournay, Administrator,

Florida Dept of Corrections,

501 S. Calhoun Street,

Tallahassee, Fl. 32399-2500

(25) Randy Tifft, Former Warden, (Now Regional Director, address unavailable),

Santa Rosa Correctional Institution,

5850 E. Milton Road,                    - SEE CONTINUATION PAGE -

8

Milton, Fl. 32583

(26) J. Haas, former Asst. Warden, (Now Warden, address unavailable),

Santa Rosa Correctional Institution,

5850 E. Milton Rd.,

Milton, Fl. 32583

(27) A. Gordon, Asst. Warden,

Tomoka Correctional Institution,

3950 Tiger Bay Road

Daytona Beach, Fl. 32124

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

## IV.   PREVIOUS LAWSUITS

NOTE:  FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.   Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes(   )                              No( ✓ )

   1.   Parties to previous action:
      (a)   Plaintiff(s): _____
      (b)   Defendant(s): _____

   2.   Name of judge: _____   Case #: _____

   3.   County and judicial circuit: _____

   4.   Approximate filing date: _____

   5.   If not still pending, date of dismissal: _____

   6.   Reason for dismissal: _____

   7.   Facts and claims of case: _____

   _____

   **(Attach additional pages as necessary to list state court cases.)**

B.   Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes(   )                              No( ✓ )

   1.   Parties to previous action:
      a.   Plaintiff(s): _____
      b.   Defendant(s): _____

   2.   District and judicial division: _____

   3.   Name of judge: _____   Case #: _____

   4.   Approximate filing date: _____

   5.   If not still pending, date of dismissal: _____

   6.   Reason for dismissal: _____

7.    Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.    Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes(✓)                              No( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.    Parties to previous action:
      a.    Plaintiff(s): _Drew C. Hartley_
      b.    Defendant(s): _State of Florida and Florida D.O.C._
2.    District and judicial division: _State and Federal Courts_
3.    Name of judge: _unknown_            Case #: _unknown_
4.    Approximate filing date: _1993 – 2013 – several cases_
5.    If not still pending, date of dismissal: _unknown_
6.    Reason for dismissal: _I have three strikes – 28 USC § 1915 (g)_
7.    Facts and claims of case: _Prison conditions, criminal/civil appeals and postconviction remedies_

**(Attach additional pages as necessary to list cases.)**

D.    Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes(✓)                              No( )

1.    Parties to previous action:
      a.    Plaintiff(s): _Drew C. Hartley_
      b.    Defendant(s): _Prison officials_
2.    District and judicial division: _Tampa, Northern and Southern_
3.    Name of judge: _unknown_            Case Docket # _unknown_
4.    Approximate filing date: _1993 - 2013_     Dismissal date: _unknown_
5.    Reason for dismissal: _failing to state a claim – 3 strikes_

6.   Facts and claims of case: _Prison conditions at best_

_____

**(Attach additional pages as necessary to list cases.)**

## V.   STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes.</u>  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

1.   To the best of the Plaintiff's Knowledge, he contracted the hepatitis C virus in the year of 2000. In 2002, Plaintiff was arrested and detained in the Pinellas County jail and during the pretrial proceedings he was diagnosed by medical personnel positive for hepatitis C. In 2003 a Florida circuit judge sentenced Plaintiff to fifteen years prison to be served at the Florida Department of Corrections (FDOC). Herein, for all purposes, Plaintiff is a U.S. citizen.

2.   Hepatitis C is a blood-borne virus that can live in a person for years without showing any symptoms, yet can eventually lead to cirrhosis, liver failure, liver cancer and death. It is the main cause of liver transplants in the U.S., which cost at least $145,000 and usually much more. And it is now killing more people every year than HIV/AIDS.

Approximately five years ago, the best available treatment combinations had to be taken for one year, with up to a 50% success rate. Newer medications that emerged cut the time to 24 weeks, with cure rates in the 60%-70% range; the cost of the treatment combination ranged from $60,000 to over $100,000.

More recently, Sofosbuvir (trade name Sovaldi) has been introduced. The Sofosbuvir drug has reduced the time it takes to cure a person to 12-weeks, and has shown in clinical trials to work at a success rate of at least 90%.

3.   In 2006, at 47 years of age, Plaintiff was examined by ultrasound. His liver echogenicity appeared slightly increased suggestive of a mild fatty liver. The hepatitis C virus had developed to a progressive debilitating health condition.

4.   Also in 2006, Plaintiff was diagnosed to having gallbladder wall polyps. It was

noted in the medical report that "follow up" should be done. To date, FDOC medical personnel have not provided the follow up medical care.

5.   In 2009 and 2010, Plaintiff was being detained at FDOC's Santa Rosa Correctional Institution (SRCI) and sought medical treatment for hepatitis C and related conditions. Plaintiff received no treatment or needed medications to offset pain as Defendants Nichols, Rummel, Haas, Kemp and Tourney acted deliberately indifferent to Plaintiff's medical needs.

6.   In February 2010, Plaintiff notified by administrative grievance. Defendants Rummel and Haas answered with false information as they denied Plaintiff medical treatment for his hepatitic C and the needed medications.

7.   In May 2010, Plaintiff notified by administrative grievance. Defendants Tourney and Kemp disregarded the false information of Rummel and Haas as a practice to deny Plaintiff medical treatment for hepatitis C and the needed medications.

8.   From 2010 to and including 2015, FDOC transferred Plaintiff to ten (10) prison institutions. Several of the transfers were a result of prison official retaliation.

9.   On October 1, 2012, Plaintiff notified by administrative grievance. (on 9-26-12 Defendant Calderon denied Plaintiff treatment for hepatitis C. Calderon confirmed that Plaintiff had already signed a medical consent for hepatitis C treatment while Plaintiff signed another medical consent for the treatment. Calderon acknowledged that Plaintiff's blood enzyme level was high. Calderon also denied a nutritional diet pass yet he observed the Plaintiff's finger nails were deformed stemming from the hepatitis C disease). Aware of these facts, Defendants Calderon and Gordon answered the grievance: "If you continue to have medical concerns please use your routine access to sick call." Plaintiff was left to continue without treatment for hepatitis C, medications, and related physical conditions. Moreover, even though Calderon diagnosed swelling of Plaintiff's left shoulder injury, Gordon approved Calderon's decision to   not   provide testing and needed pain medications for such condition. .

10.   On October 17, 2012, Plaintiff notified by administrative grievance. Defendants O Harvey and Bowden approved the practice of Calderon and Gordon that denied Plaintiff medical treatment for hepatitis C, medications, and related physical conditions. Moreover, O Harvey and Bowden erected a record that falsely claimed Plaintiff refused treatment — O Harvey and Bowden's practice resulted in the continued denial of hepatitis C treatment.

11.    Between 2010 and 2013, FDOC practiced transferring Plaintiff from Santa Rosa Correctional Institution to Okeechobee Correctional Institution to Dade Correctional Institution to Jackson Correctional Institution to Hardee Correctional Institution to Tomoka Correctional Institution then Back-to Santa Rosa Correctional Institution. (within this time frame there may be other defendants that would bring an amended complaint)

12.    Lichen Planus. Stemming from untreated hepatitis C Plaintiff developed Lichen Planus -- a serious oral disease that eats away the inner walls of cheeks, tongue tissue, gum tissue and lip tissue.   2013, because of Plaintiff's hepatitis C, Lichen Planus can not effectively be treated nor cured.   Lichen Planus is an extreamly painful disease.

13.    On October 31, 2013, Defendant Nichols informed the Plaintiff he would not be receiving treatment for his hepatitis C disease.; Nichols implicated Defendant Johnson, that, "Corizon is setting up their own system and criteria for who gets seen." Nichols possessed the recent blood test results of Plaintiff that indicated needed treatment for hepatitis C. Dietary needs and medications were not provided either.

14.    Approximately 2013, Corizon Health Services, Inc. contracted as a medical and mental health care provider for FDOC.  Medical personnel of FDOC became medical personnel of Corizon. Sweeping reforms to cut costs were implemented and continue to date.  Consequently, unprovided or low quality medical services became the norm at the FDOC.

15.    Approximately November 2013, FDOC transferred the Plaintiff to Franklin Correctional Institution where he remained until November 2014. Defendant Vilchez refused to treat Plaintiff's hepatitis C, in turn, Lichen Planus, extensively-spreading psoriasis, fatigue complications and hot and cold symptoms, stomach cramps and painful liver, lower spine swelling, and oral legions and bleeding. Vilchez also shaved costs by refusing to prescribe medications for pain.  Vilchez practiced evasively in not disclosing his documentations entered in the Plaintiff's medical file while the nursing personnel practiced unfiling records and entering incomplete information in the Plaintiff's case.

16.    Approximately November 2014, FDOC transferred the Plaintiff to Polk Correctional Institution where he remained until January 2015.

17.    On November 3, 2014, Plaintiff visited with Defendant Cabaleiro. Doctor Cabaleiro too practiced evasively. Plaintiff explained his poor physical condition, and that doctor Vilchez had concern about potential harm to the liver when using steroid for the Lichen Planus conditions while the Plaintiff had the hepatitis C disease.  Cabaleiro initially stated that

she was going to report the Plaintiff's medical situation to "Tallahassee", but when she was asked "with whom" and "what particular office" Cabaleiro changed up and stated "Corizon". Cabaleiro refused to release to Plaintiff any contact information in these regards, informed falsely that "6-8 week hepatitis C treatments were being done at the Regional Medical Center," and while alleging there was a "waiting list." Plaintiff also informed Cabaleiro that doctor Vilchez had a concern about the Plaintiff's elevated blood cells so he had recently ordered blood tests. Cabaleiro practiced silence then referred to the phantom waiting list, without more.

18.   Also on November 3, 2014, Cabaleiro was shown the Plaintiff's serious psoriasis skin condition   (elbow, hip, knee and back). In response, Cabaleiro touched the Plaintiff's ankles, without more. When the Plaintiff informed Cabaleiro about the ongoing spreading of the psoriasis, that the currently prescribed cream treatment is ineffective, Cabaleiro refused to have the Plaintiff evaluated by a dermatologist, said there "is no cure for psoriasis" and proceeded to prescribe the same ineffective cream.

19.   On November 10, 2014, Plaintiff again visited with Cabaleiro. Plaintiff informed he woke up and was bleeding from the mouth and that a flair-up (legions) occurred. Cabaleiro looked at the bleeding and flair-up and observed the legions. Cabaleiro provided no treatment, but said to utilize the regular sick call procedure.

20.   Also on November 10, 2014, when the Plaintiff raised his hepatitis C issue; Cabaleiro's claim of: "reporting the medical situation to Tallahassee/Corizon," Cabaleiro again practiced evasively -- could not provide information, as Cabaleiro had not reported such -- could not provide any names of her alleged contacts....

21.   Moreover, Cabaleiro practiced opposite of doctor Vilchez and the involved dental personnel of Franklin Correctional Institution in regards to the dietary needs in the Plaintiff's case. To shave costs, Cabaleiro first had Plaintiff suffer by forcing a mechanical Dental Diet Pass and then a Puree Diet Pass on the Plaintiff, as opposed to a diet of soft food that was tolerable and would stay down; Cabaleiro had created a situation for a flair-up of Lichen Planus.

22.   On January 14, 2014, FDOC transferred the Plaintiff from Polk Correctional Institution and on January 16, 2014, he arrived at the Columbia Correctional Institution-Annex (CCI).

23.   Silence can be equated to fraud when medical personnel examine a patient; or observe poor physical conditions of a patient, have a duty to document the poor physical conditions into an existing medical file of the patient, yet purposely utilize said file to distort or conceal the

accurate or true facts of the patient's poor physical conditions. Medical personnel at CCI operate like such in the Plaintiff's case. Plaintiff has had to resort to documenting his efforts at CCI in regards to the medical services and his poor physical conditions.

24. Plaintiff provides CCI medical personnel sick-call request forms that detail the specifics of his poor physical conditions and the majority of the forms vanish at the hands of the CCI medical personnel.

25. Since transferring to CCI the Plaintiff has lost considerable vision ability of the left eye and the CCI medical personnel are not treating the condition and delaying him access to a qualified optometrist.

26. Plaintiff continues to suffer from fatigue, stomach cramps, spreading of psoriasis, painful liver, the severely painful conditions of the Lichen Planus disease, is exposed to opportunistic infections such as pneumonia at 56 years of age, wasting syndrome, cirrhosis, liver failure and liver cancer -- Plaintiff is dieing sooner and he remains with untreated hepatitis C.

27. Further, because of his untreated hepatitis C, and the practices of Defendants Marceus and Pastora, there is no treatment of the Lichen Planus in the Plaintiff's case. Plaintiff suffers daily where the Lichen Planus disease has eaten away at the inner walls of each cheek, eaten away tongue tissue, eaten away gum tissue, and eaten away lip tissue -- Plaintiff receives no medications to effectively treat the severe and constant pains. (emphasis added) Plaintiff is also at great risk of developing oral cancer.

28. Defendants Drake, O Harvey and Bowden have agreed to deny hepatitis treatment in the Plaintiff's case. When Plaintiff presented the issue to them, and the above poor physical conditions to them, their response was "sign up for sick call," no treatments.

29. At all times relevant herein, each of the Defendants as listed (save Defendant Johnson), are residents of the State of Florida and all listed Defendants have acted or failed to act while vested under the color of the law, of a statute, ordinance, regulation, custom, or usage or in active concert with such defendants who are so acting.

30. Where sued in their official capacities, relief is sought against the defendants as well as their agents, assistants, successors, employees, and persons acting in concert or in cooperation with them or at their direction or under their supervision.

31. All conditions precedent have been satisfied, including but not limited to the exhaustion of administrative remedies.

16

32.     At all times relevant herein, the Defendants and their agents, assistants, and employees acted pursuant to the policies, regulations or decisions officially adopted or promulgated by Defendants Jones, Buss, Tucker, Crews, McNeil, Long Do, Ogunsanwo, Reimers, D'Acquisto, their predecessors, and others of the FDOC, Defendant Johnson and Corizon Health Services, Inc., and Defendants Beaty, Chaykin, and their predecessors of the Correctional Medical Authority whose acts and omissions may fairly be said to represent official policy or were pursuant to govern-mental custom of the FDOC, et al, Corizon Health Services, Inc., and or the Correctional Medical Authority, State of Florida, et al.

33.     At all times relevant herein, the State of Florida Correctional Medical Authority is responsible to "Assist in delivery of health care service for inmates (including Plaintiff) in the FDOC by advising the Secretary of Corrections on the professional conduct of primary, convalescent, dental, and mental health care and the management of costs consistent with quality care." Section 945. 602-3, Florida Statutes.

34.     At all times relevant herein, Defendant Johnson's responsibilities include, but are not limited to, overseeing the delivery of healthcare services for FDOC inmates (including Plaintiff), provide the vision, expertise, and strategic leadership for Corizon's clinical programs, developing strategies that promote quality, safety and cost effectiveness for Corizon's healthcare program and serve as the company's ultimate authority on medical issues and while under contract with FDOC.

35.     At all times relevant herein, Defendant Johnson remains responsible for direct clinical care, policy and program development, regulating oversight, and strategic decision making and effective communications for Corizon Health Services, Inc., and while under contract with the FDOC.

36.     There is an ongoing custom, policy or practice at FDOC to deny inmates (including Plaintiff) treatment and care for the hepatitis C virus. The FDOC under the authority of Secretary Jones, (cci Warden Drake) and their subordinates, remain sufficiently on notice of this custom, policy or practice but refuse to take action and are otherwise deliberately indifferent to the rights and injuries sustained by the inmates, including Plaintiff.

31.     Upon information and belief, at all times relevant herein, the Defendant Secretaries and Wardens of FDOC, and Defendants Johnson, Beaty, Chaykin, Long Do, Ogunsanwo, Reimers, D'Acquisto, and their predecessors permitted and tolerated and continue the custom, policy or practice of denying inmates (including Plaintiff) treatment and care for the hepatitis C virus despite having the legal authority and necessary resources to stop these violations.

## VI.   STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific.  Number each separate claim and relate it to the facts alleged in Section V.  **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

<u>COUNT 1</u>

<u>VIOLATION OF CONSTITUTIONAL RIGHTS</u>

38.   Plaintiff repeats and realleges paragraphs 1 through 37.

39.   Defendants Rummel, Nichols, Calderon, Vilchez, Cabaleiro, Pastora and Marceus' actions and inactions violated Plaintiff's rights to adequate medical care.   42 USC § 1983

40.   In 2009 and 2010, doctor Rummel and ARNP Nichols acted deliberately

## VII.   RELIEF REQUESTED:

State briefly what relief you seek from the Court.  Do not make legal arguments or cite to cases/ statutes.

(1) COUNT 1  paragraphs 52 - 53 — Grant

(2) COUNT 2  paragraphs 64 - 65 — Grant

(3) COUNT 3  paragraphs 73 - 74 — Grant

(4) Motion for Preliminary Injunction — Grant

(5) Appoint counsel to represent Plaintiff

(6) Grant application to proceed insolvent pursuant to Imminent Danger Exception

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

may 12, 2015
_____
(Date)

_____
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☐ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the 12th day of  may , 20 15 .

_____
(Signature of Plaintiff)

Revised 03/07

indifferent to the Plaintiff's serious medical needs for hepatitis C, related medical conditions, and medications to offset pain.

41.    In 2009 and 2010, at Santa Rosa Correctional Institution, Plaintiff utilized the FDOC inmate sick-call procedure numerous times, complained of and sought treatment for hepatitis C, related medical conditions, and pain only to be untreated nor cared for by ARNP Nichols and doctor Rummel; Nichols immediate supervisor.

42.    In 2012, at Tomoka Correctional Institution, Plaintiff utilized the FDOC inmate sick-call procedure several times, complained of and sought treatment for hepatitis C, related medical conditions, and pain only to be untreated nor cared for by doctor Calderon. Doctor Calderon acted deliberately indifferent to the Plaintiff's serious medical needs. Rather than providing treatment and care Calderon resorted to giving instruction to utilize "routine access to sick-call," which was no treatment at all for hepatitis C.

43.    In 2013, at Santa Rosa Correctional Institution, untreated of hepatitis C, the Plaintiff contracted lichen planus.

44.    In 2013, ARNP Nichols acted deliberately indifferent to the Plaintiff's serious medical needs for hepatitis C, related medical conditions, and medications to offset pain.

45.    In 2013, at Santa Rosa Correctional Institution, Plaintiff utilized the FDOC inmate sick-call procedure several times, complained of and sought treatment for hepatitis C, related medical conditions, and pain only to be untreated nor cared for by ARNP Nichols and doctor Rummel; Nichols immediate supervisor. Nichols possessed recent blood test results of Plaintiff indicating needed treatment for hepatitis C.

46.    In 2013 and 2014, at Franklin Correctional Institution, doctor Vilchez acted deliberately indifferent to the Plaintiff's serious medical needs for hepatitis C, related medical conditions, and medications to offset pain.

47.    In 2014, at Franklin Correctional Institution, Vilchez refused to treat Plaintiff's hepatitis C, in turn, lichen planus. Moreover, Vilchez knew that the Plaintiff's condition needed to be evaluated and examined by a skin specialist yet he refused such a referral. Vilchez was more concerned about saving costs.

48.    In 2014 and 2015, doctor Cabaleiro acted deliberately indifferent to the Plaintiff's serious medical needs for hepatitis C, related medical conditions, and medications to offset pain.

49.    In 2014 and 2015, at Polk Correctional Institution, Plaintiff utilized the FDOC inmate sick-call

procedure several times, complained of and sought treatment for hepatitis C, related medical conditions, and pain, only to be untreated nor cared for by doctor Cabaleiro. One example is Cabaleiro disregarded the blood test results provided to her then used a phantom waiting list as a method to untreat the hepatitis C. Another obvious denial of treatment occurred where Cabaleiro was shown the serious case of psoriasis, the cream medication was ineffective to a point that the psoriasis continued to spread, yet Cabaliero continued its use while not referring the matter to a dermatologist as needed. Moreover, when doctor Cabaleiro was confronted with oral bleeding and the flair up of lichen planus, the prescribed treatment was to "utilize the regular sick-call procedures," which amounted to a clear case of deliberate indifference. (emphasis added) No treatment at all.

50.  In 2015, doctor Marceus and ARNP Pastora acted deliberately indifferent to the Plaintiff's serious medical needs for hepatitis C, related medical conditions, and medications to offset pain.

51.  In 2015, at Columbia Correctional Institution Annex, Plaintiff utalized the FDOC inmate sick-call procedure several times, complained of and sought treatment for hepatitis C, related medical conditions, and pain, only to be untreated nor cared for by ARNP Pastora and doctor Marceus; Pastora's immediate supervisor. Plaintiff's case has a new caveat, consistent with a long existing case of untreated    hepatitis is harm to the vision which has recently and dramatically happened to the Plaintiff. While armed with this recent evidence of serious debilitation Pastora and Marceus continue in their unconstitutional ways of not providing treatment and care. While the Plaintiff is in serious risk of developing oral and/or liver cancer as he remains untreated for the hepatitis C disease, the Plaintiff is being blinded by the hepatitis C virus  and the defendants have delayed him access to an optometrist, of record.

52.  As a direct and proximate result of the malicious and sadistic actions or inactions of the Defendants named in this count, Plaintiff suffered damages in an amount to be determined at trial for his severe physical, mental and emotional injuries, including embarrassment, humiliation and degradation, mental anguish, fear and pain.

53.  Wherefore, Plaintiff respectfully requests this Court to: (1) enter judgment declaring that the acts and omissions of the Defendants named in this count, as set forth above, violate rights secured to Plaintiff by the Eighth and Fourteenth Amendments to the U.S. Constitution; (2) award compensatory and punitive damages to the Plaintiff against the individually-named Defendants in this count and in an amount to be determined at trial; (3) grant injunctive relief as needed; (4) require the Defendants named in this count to pay the legal costs and expenses

herein, including reasonable attorneys' fees; and (5) grant such further relief as it deems appropiate.

## COUNT 2

### VIOLATION OF CONSTITUTIONAL RIGHTS

54.    Plaintiff repeats and realleges paragraphs 1 through 37.

55.    Defendants Haas, Kemp, Tourney, Tifft, O Harvey, Drake, Gordon and Bowden's actions and inactions violated Plaintiff's rights to adequate medical care.  42 USC 1 1983.

56.    In 2009 and 2010, Plaintiff was imprisoned at FDOC's Santa Rosa Correctional Institution (SRCI). During this time frame ARNP Nichols and doctor Rummel were the assigned SRCI medical personnel for treating and caring for the prisoners, including Plaintiff. Plaintiff was not provided medical treatment or care for hepatitis C, related physical health conditions, or pain.

57.    In 2009 and 2010, Nichols and Rummel's supervisors and/or agents Haas, Tifft, Rummel, Tourney and Kemp finalized their decisions to not provide the medical treatment or care for hepatitis C, related physical health conditions, or pain in the Plaintiffs case.

58.    On September 26, 2012, Plaintiff was imprisoned at FDOC's Tomoka Correctional Institution and visited with doctor Calderon. Three concerns were discussed : (1) lower back injury and pain; (2) left shoulder injury and pain; and (3) hepatitis C treatment. The left shoulder injury was diagnosed as "some swelling", the back was not diagnosed, and the hepatitis C disease was acknowledged. Calderon provided no medical treatment or care. Plaintiff explained he had signed another blue consent for treatment form months prior yet remained untreated. Calderon verified such by reviewing the medical records of the FDOC file — Plaintiff signed another consent for treatment form for hepatitis C treatment. Calderon informed of high level blood enzyme test results, refused treatment, a nutritional diet, supplements, yet he seen Plaintiffs deformed finger nails. Plaintiff informed Calderon of daily suffering and that he was going to die sooner if not treated. Calderon still refused treatment and care.

59.    In 2012 and 2013, Calderon's supervisors and/or agents Gordon, O Harvey and Bowden finalized his decision to not provide the medical treatment or care for hepatitis C, related physical health conditions, or pain.

60. In 2015, Plaintiff was imprisoned at FDOC's Columbia Correctional Institution Annex. Doctor Marceus and ARNP Pastora were the assigned medical personnel for treating and caring for the prisoners, including Plaintiff. Plaintiff was not provided medical treatment or care for hepatitis C, related physical health conditions, or pain.

61. In 2015, Marceus' and Pastora's supervisors and/or agents Drake, O Harvey and Bowden finalized the decisions of Marceus and Pastora to not provide the medical treatment or care for hepatitis C, related physical health conditions, or pain in the Plaintiff's case.

62. Defendant supervisors/agents Haas, Tifff, Tourney, Kemp, Gordan, O Harvey, Drake, and Bowden vested authority to require the medical treatment and care in the Plaintiff's case yet they acted deliberately indifferent to the Plaintiff's serious medical needs and his constitutional rights.

63. Defendant supervisors/agents Haas, Tifff, Tourney, Kemp, Gordan, O Harvey, Drake, and Bowden acted pursuant to FDOC agency custom, policy, or practice when finalizing the decisions to not treat or provide care in the Plaintiff's case.

64. As a direct and proximate result of the malicious and sadistic actions or inactions of the Defendants named in this count, Plaintiff suffered damages in an amount to be determined at trial for his severe physical, mental and emotional injuries, including embarrassment, humiliation and degradation, mental anguish, fear and pain.

65. Wherefore, Plaintiff respectfully requests this Court to: (1) enter judgment declaring that the acts and omissions of the Defendants named in this count, as set forth above, violate rights secured to Plaintiff by the Eighth and Fourteenth Amendments to the U.S. Constitution; (2) award compensatory and punitive damages to the Plaintiff against the individually-named Defendants in this count and in an amount to be determined at trial; (3) grant injunctive relief as needed; (4) require the Defendants named in this count to pay the legal costs and expenses herein, including reasonable attorneys' fees; and (5) grant such further relief as it deems appropriate.

## COUNT 3
### VIOLATION OF CONSTITUTIONAL RIGHTS

66. Plaintiff repeats and realleges paragraphs 1 through 37.

67. Defendants Florida Department of Corrections, et al, Jones, Buss, Tucker, Crews, McNeil,

Long Do, Ogunsanwo, Reimers, D'Acquisto, Correctional Medical Authority, et al, Beaty, Chaykin, Corizon Health Services, Inc., and Johnson's actions and inactions violated Plaintiff's rights to adequate medical care. 42 USC ≥ 1983.

68.    In September of 2003, the Plaintiff entered the FDOC prison system where he has remained to date. The refusal to provide hepatitis C treatment and care is not medically justifiable in the Plaintiff's case.

69.    In the year of 2014, approximately 3.2 million people in the United States had chronic hepatitis C. Approximately 17,000 Americans become infected with hepatitis C each year. And approximately 15,000 is the number who die every year from hepatitis C-related liver disease. Centers for Disease Control and Prevention July 2014. Further, Americans between the ages of 50 and 68 account for roughly 75 percent of hepatitis C infections in the United States. Worldwide, as many as 3 percent of people have the infection known as HCV (hepatitis C virus).

70.    In the year of 2011, the Food and Drug Administration approved the drugs Victrelis and Incivek with cure rates for hepatitis C to 75 percent. In 2013 Olysio (simeprevir) and Sovaldi (sofosbuvir) were approved. Olysio blocks a protien that the hepatitus C virus needs to replicate while Sovaldi is the first drug used to treat certain types of hepatitis C without being given along with interferon, a standard treatment. The drugs approved in 2013 have an approximate 90% success rate. The cost of the Sovaldi treatment begins at approximately $84,000 per person and reaches to over $100,000. It is a fair statement to say that at a minimum, the FDOC presently has 5,000 inmates with the hepatitis C disease. It is the Plaintiff's position that he is one of thousands of FDOC inmates who is denied hepatitis C treatment because of costs and the time remaining on the current commitment, without regard to the seriousness or progressive state of the hepatitis C disease. These two factors "costs" and "time" have been told to the Plaintiff by various prison medical personnel, to include doctors and nurses.

71.    It is prima facie evidence that, at a bare minimum it would cost FDOC and the state of Florida tax-payers in the area of $500,000,000 to meet the constitutional requirement in these regards. In all the years that the Plaintiff has been incarcerated, and the 21 prison institutions where he has lived, he has yet to have found one inmate to have been treated for hepatitis C in the FDOC. See Ex. A -- ARNP Nichols response.

72.    Defendants Florida Department of Corrections, et al, Jones, Tucker, Crews, McNeil, Long Do, Ogunsanwo, Reimers, D'Acquisto, Correctional Medical Authority, et al, Beaty, Chaykin,

23

Corizon Health Services, Inc., and Johnson have a custom, policy or practice of refusing FDOC inmates treatment and care for hepatitis C because of costs and based on terms of commitment and in violation of the Plaintiff's constitutional rights to receive adequate medical care.

73.   As a direct and proximate result of the malicious and sadistic actions or inactions of the Defendants named in this count, Plaintiff suffered damages in an amount to be determined at trial for his severe physical, mental and emotional injuries, including embarrassment, humiliation and degradation, mental anguish, fear and pain.

74.   Wherefore, Plaintiff respectfully requests this Court to: (1) enter judgment declaring that the acts and omissions of the Defendants named in this count, as set forth above, violate rights secured to Plaintiff by the Eighth and Fourteenth Amendments to the U.S. Constitution; (2) award compensatory and punitive damages to the Plaintiff against the jointly, severally and individually, respectively-named Defendants in this count and in an amount to be determined at trial; (3) grant injunctive relief as needed; (4) require the Defendants named in this count to pay the legal costs and expenses herein, including reasonable attorneys' fees; and (5) grant such further relief as it deems appropiate.